E-FILED
Friday, 02 October, 2015 11:44:10 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| PHILIPPI-HAGENBUCH, INC., and LEROY HAGENBUCH, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 12-1099 |
| WESTERN TECHNOLOGY SERVICES INTERNATIONAL, INC., and WOTCO, INC., ) ) ) ) | |
| Defendants. ) | |

# O R D E R

This matter is now before the Court on Defendants' Motion for Summary Judgment of Non-Infringement of the Water Tank Maintenance Claims. The Motion [166] is fully briefed by the parties and is now ready for resolution.

### BACKGROUND

Both parties are competitors in the manufacture of off-highway truck bodies and large water tanks used in mining. This case arises out of a claim by Plaintiffs that Defendants have infringed on its patents for designing and making custom, off-highway dump truck bodies and high-volume water tanks.

Specifically relevant to this Motion is the fact that Hagenbuch is the owner of the '507 patent, entitled "Baffled Tank for a Vehicle," which issued to him on June 15, 2010. In October 2010, Hagenbuch received pictures of a Westech tanker that were construed as showing infringement of his water tank patent. On December 1, 2010, Plaintiffs' counsel sent Westech a letter that stated in relevant part:

> The following patents owned by Mr. Hagenbuch relate to features of the water tanks manufactured by Philippi-Hagenbuch. . . .
>
> From observation of one of Westech's water trucks located at Cloud Peak's Antelope Coal Mine in Wyoming, it appears your company's water trucks have copied features of the Philippi-Habenguch water tanks, including access hatches on the front and rear walls of the tanks. These features are protected by one or more of the above identified patents and pending applications.
>
> We direct your attention, for example, to US Patent No. 7,735,507. A copy is enclosed for your convenient reference. Claims 1 and 35 are reproduced below as illustrations of the features protected by this US patent. . . .
>
> Based on the information at hand, Westech is infringing at least Mr. Hagenbuch's '507 patent. To remedy this situation, we require Westech to agree to immediately stop any future manufacture of infringing tanks and agree to pay Mr. Hagenbuch damages of $5,000.00 (USD) per unit for all water tanks already made that infringe one or more of the patents. In this regard, we also require Westech to provide an accounting of its water tanks sold in the last six (6) years and their features relating to external access hatches and personnel openings in the internal baffling. . . .
>
> Mr. Hagenbuch is prepared to enforce his patent rights and will do so if Westech appears to not consider this a serious matter requiring immediate attention.

Defendants' counsel responded, requesting a claim chart directed at a specific product for analysis. This was provided on February 24, 2011.

Plaintiffs brought this action alleging, among other things, that Westech has induced infringement of claims 35-38 of the '507 patent under 35 U.S.C. § 271(b). Defendants seek summary judgment on this allegation.

## LEGAL STANDARD

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c).  The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552 (1986).  The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case."  *Id.* at 2553.  However, a plaintiff's uncorroborated testimony or subjective belief standing alone is insufficient to defeat a motion for summary judgment.  *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997); *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 401 (7th Cir. 1997).  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56 (1986).  Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial.  *Celotex Corp.*, 106 S.Ct. at 2553.  This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party.  *Anderson*, 106 S.Ct. at 2511; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

**ANALYSIS**

Section 271(b) of the Patent Act provides, "Whoever actively induces infringement of a patent shall be liable as an infringer."  Inducement requires a showing that: (1) there has been direct infringement, and (2) "the alleged infringer knowingly induced infringement and possessed

specific intent to encourage another's infringement." *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005), *citing Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002). Circumstantial evidence of intent is sufficient to meet this burden. *Id.*

Westech argues that it is not liable for infringement by inducement because there is no evidence that any third party has directly infringed by performing maintenance functions through the front or rear access ports or that Defendants had the specific intent to encourage any customers to infringe in this manner. Defendants correctly note that there can be no inducing infringement without direct infringement by another party. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S.Ct. 2111, 2115-17 (2014). In determining whether there has been direct infringement, the Supreme Court explained:

> A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the steps are carried out. This principle follows ineluctably from what a patent is: the conferral of rights in a particular claimed set of elements. "Each element contained in a patent claim is deemed material to defining the scope of the patented invention," and a patentee's rights extend only to the claimed combination of elements, and no further.

*Id.*, at 2117. Taking this one step further, the Federal Circuit has held that the method's steps "have not all been performed as claimed by the patent unless they are all attributable to the same defendant, either because the defendant actually performed those steps or because he directed or controlled others who performed them." *Id.*, *citing Muniauction, Inc. v. Thompson Corp.*, 532 F.3d 1318, 1323, 1329-30 (Fed. Cir. 2008) (holding that "where steps of a method claim are performed by multiple parties, the entire method must be performed at the control or direction of the alleged direct infringer" to establish infringement.)

Claim 35 discloses a method for performing maintenance on a tanker vehicle that dispenses water from a tank onto a working area to help reduce dust clouds resulting from other vehicles working in the area, comprising the following five steps (i.e., limitations): a. unfastening and opening a hatch of one or more access openings on an exterior surface of the tank mounted to the tanker vehicle for carrying the water dispensed in the working area, where the access openings are positioned on the exterior of the tank so as to promote circulation of air into an interior of the tank when the hatch is opened; b. entering into an interior of the tank through one of the access openings; c. performing a maintenance task on the interior of the tank; d. exiting the interior of the tank through one of the access openings upon completion of the maintenance task; and e. closing and fastening the hatch of the access openings. Claim 36 depends on claim 35 and adds the limitation "moving about the interior of the tank to perform the maintenance task by passing through access openings in baffles within the interior of the tank." Claim 37 depends on claim 36 and adds the limitation "wherein one or more of the access openings are sized to allow personnel to walk between compartments within the tank and defined by the baffle network." Claim 38 depends on claim 35 and adds the limitation "wherein the unfastening and opening of the hatch includes unfastening and opening hatches for each of the two or more access openings and closing the hatches after completion of the maintenance task." To establish direct infringement, a single party must have performed all of the steps in the claim. *Id.*

Plaintiffs attempt to piece together evidence of direct infringement by responding that Westech has admitted that its tanks are designed to enable inspection and maintenance and that normal and regular maintenance is required to preserve the water tank warranty. They cite warning labels advising to follow confined space procedures before entering the wall ports and terminology labeling the covers for these ports "manhole" covers. Additionally, they argue that

Joshua Swank testified that he saw a worker enter a Westech tank that was not mounted to a vehicle in Canada through one of the wall ports; he assumes that this person began to weld because he saw welding sparks. He did not personally observe how the cover on the access opening was removed, who was inside the tank, what was done while inside the tank, or how the individual(s) got out of the tank or replaced the cover. However, this activity occurred outside the United States and cannot by itself establish infringement even if it was not otherwise deficient. They then point to the deposition testimony of Scott Taylor, a design engineer for Westech, who stated that the access openings in the bulkhead of the tanks were for ventilation during maintenance and were not intended for either primary or secondary assess, as access was intended to be achieved via the stairway on the top of the tank; his only indication of use of these openings for access was that Westech people do crawl through the opening during the manufacturing process, which would not be supportive of establishing active inducement of a third party performing maintenance.

Plaintiffs cite passages in Westech's international patent application for the stairway access tanks ("WO '954") as support for their inducement theory. Paragraph 5 of the '954 patent states that "Safe manufacture and maintenance of the tank requires access to the interior of the tank for construction and periodic inspection, cleaning and maintenance." Paragraph 10 then provides that access ports in the front and rear bulkheads could be used for tank ventilation or as secondary access ports; however, the main thrust of Paragraph 10 clearly points to an access system comprised of stairs with the access ports serving for ventilation. Similarly, Paragraph 62 identifies the access ports in the bulkheads as a means to ventilate the tank and to get equipment, tools, and materials inside the tank, while noting that they may serve as secondary access points if allowed by local safety codes.

Plaintiffs note that Westech's Water Tank Manual does not specify which openings to use for entry for tasks such as maintenance and suggest that because use of the access openings for this purpose is not expressly prohibited, it is therefore encouraged.  In other words, Plaintiffs' position is that because activity that could constitute infringement is not expressly prohibited, it is encouraged or induced.  Contrary to Plaintiffs' suggestion, the Court finds that this fact actually promotes an inference that Westech is not inducing infringement, particularly as the evidence indicates that entering through these access openings would require foregoing entry through a much larger opening (ranging from 42 inches on each side to 58 inches on each side) equipped with a ladder or stairway in favor of removing 18-20 bolts in a 65 lb. cover while standing on a ladder in order to squeeze through an opening not much larger than two feet in diameter.  No reasonable jury would make the inference suggested by Plaintiffs in this regard, and in any event, the fact that this may not be foreclosed by the documentation falls short of meeting Plaintiffs' burden to demonstrate that third parties actually performed every element of Claims 35-38 of the '507 patent in the United States based on Westech's inducement.  Defendants are therefore entitled to summary judgment on this aspect of Plaintiffs' claim.

Plaintiff argues that in addition to infringement by inducement, it has alleged direct infringement and that Westech induces others to infringe the water tank maintenance claims by entering the accused water tanks through any access opening (including the fill hole) for maintenance.  The Court has held that Plaintiffs may not bring a claim of direct infringement of the '507 patent under § 271(a), as it was not properly alleged in their final infringement contentions.  (9/9/2005 Order; [333]).  That same Order also held that Plaintiffs were not barred from pursuing a claim that Defendants induced others to infringe Claims 35-38 of the '507 patent by entering through the fill hole for maintenance.  However, the Court's finding that Plaintiffs

have failed to present a genuine issue of material fact with respect to whether third parties actually performed every element of Claims 35-38 of the '507 patent in the United States based on Westech's inducement is equally applicable to this theory. Accordingly, Defendants are entitled to summary judgment of non-infringement of Plaintiffs' '507 patent.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment of Non-Infringement of the Water Tank Maintenance Claims [166] is GRANTED .

ENTERED this 2nd day of October, 2015.

s/ James E. Shadid<br>
James E. Shadid<br>
Chief United States District Judge